UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BETTY J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:20cv142 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since November 6, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease (CAD); status-post quadruple bypass; chronic obstructive pulmonary disease (COPD); asthma; obesity; osteoarthritis of the hands; left and right trigger fingers; degenerative changes of the lumbar spine; and mild degenerative joint disease of the left hip (20 CFR 404.1520(c)).

4. The claimant does not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 303.1567(b) except that the claimant can frequently climb ladders, ropes, scaffolds, ramps, and stairs; and frequently balance, stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to temperature extremes; wetness; humidity; and fumes, odors, dust, gases, and poor ventilation. The claimant can work in an environment with a moderate noise level, such as a retail store.

6. The claimant is capable of performing past relevant work as a fast food manager (DOT # 185.137-010). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act from November 6, 2015, through the date of this decision (20 CFR 404.1520(f).

(Tr. 20- 28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on November 30, 2020. On January 11, 2021 the

defendant filed a memorandum in support of the Commissioner's decision.  Plaintiff has declined to file a reply.  Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ improperly evaluated Plaintiff's RFC.  The RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). In determining the RFC, the ALJ makes an administrative assessment of a claimant's ability to perform work-related activities on a regular and continuing basis. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (S.S.A.). An ALJ assesses a claimant's RFC based on all of the relevant evidence in the claim file at the time he or she makes a decision, including the objective

4

medical evidence, medical source opinions and observations, and a claimant's own statements about her limitations. *Id.* Although the ALJ is responsible for assessing a claimant's RFC, the claimant has the burden of showing how her impairments limit her functioning. *See* 20 C.F.R. § 404.1512(a)(1); *see also Abbett v. Berryhill*, No. 1:17-CV-232-TLS, 2018 WL 3018967, at *5 (N.D. Ind. June 18, 2018) (holding that the plaintiff has the "burden to come forward with evidence of her limitations.").

Plaintiff challenges the ALJ's finding that she could perform fine and gross manipulation bilaterally on a frequent basis. She argues that she "should have been limited to only the occasional use of her hands due to pain, her fingers locking up with activity, and increased swelling with activity". She further contends that "[s]uch a limitation would have resulted in a 'Sedentary' RFC" and a finding that she was disabled under the grids.

As the ALJ noted, Plaintiff saw Upendra Patel, M.D., in May 2016 with complaints of locking and clicking in her left middle trigger finger (Tr. 24, 683, 686). In June 2016, Dr. Patel performed a left trigger finger release procedure (Tr. 24, 675-66, 686-87). At a follow-up visit in late-June 2016, Plaintiff complained of some soreness in her left finger with no other issues (Tr. 24, 666-70). A left hand x-ray showed evidence of minimal degenerative joint disease (Tr. 24, 518-19).

During a March 2017 consultative examination, M. Siddiqui, M.D., found that Plaintiff had mild swelling in her hands; her grip strength was 4+/5; and she could pick up/grip a coin and zip/unzip her purse with some difficulty (Tr. 25, 938-41).

Plaintiff saw Arush Patel, M.D., in December 2017 for bilateral hand pain (Tr. 25, 1197). Dr. Patel noted evidence of right and left trigger fingers, which he treated with cortisone injections

5

(Tr. 25, 1201-03). Later that month, Plaintiff's hand x-rays showed no evidence of significant arthritic changes (Tr. 25, 1093-94). The following month, Plaintiff reported to Dr. Patel that the injections provided some relief (Tr. 25, 1205). Dr. Patel diagnosed Plaintiff with osteoarthritis of the hands, and he referred her to occupational therapy (Tr. 25, 1205-09). Plaintiff followed-up with Dr. Patel in February 2018 for intermittent hand pain. Dr. Patel noted that Plaintiff could undergo surgery or have steroid injections, but she declined both, so he prescribed medication (Tr. 25, 1211-15).

In April 2018, Plaintiff presented to Carol Cornelius, M.D., with hand complaints, as well as other issues (Tr. 26, 1075-80). Dr. Cornelius noted that Plaintiff's extremities were normal, with no evidence of edema, and she prescribed medication (Tr. 1078). Six months later, in October 2018, Plaintiff saw Dr. McIntire for hand and left hip pain (Tr. 26, 1106). Dr. McIntire recommended Tramadol for Plaintiff's hip and Meloxicam for her hands (Tr. 26, 1106-11). At a follow-up appointment two weeks later, Plaintiff did not report any hand complaints; rather, her chief complaint was hypertension (Tr. 1102-05).

The State agency medical consultants who reviewed Plaintiff's records at the initial and reconsideration levels of administrative review determined that Plaintiff did not have any manipulative limitations (Tr. 111, 123-24). The ALJ gave little weight to these opinions, finding instead that the record supported a limitation to frequent fine and gross manipulation because of her hands and fingers locking up at times due to the trigger fingers and osteoarthritic changes (Tr. 27, 46, 686-87, 952-56, 1075-80, 1197-1203, 1211-15).

The ALJ also considered Plaintiff's statements about how her hand impairments impacted her activities of daily living (Tr. 26). Plaintiff testified that she could lift around 10 pounds and that

6

her fingers lock up, causing her to drop objects (Tr. 24, 47, 50). Plaintiff further testified that she could not perform all of her chores because of difficulty using her hands, but she admitted that she vacuumed, dusted, and washed dishes (Tr. 26, 45, 55). The record also indicates that Plaintiff had no problems taking care of her own personal needs, she cooked meals most of the time, and she loaded the dishwasher, wiped the counters, and made the beds (Tr. 26, 229-31). The ALJ acknowledged Plaintiff's statements about her alleged limitations, but he also noted that her diagnostic testing showed evidence of only mild degenerative joint disease in the left hand with no significant arthritic changes in either hand (Tr. 26, 518-19, 1093). Further, the ALJ discussed evidence showing that Plaintiff had grip strength of 4+/5 with only some difficulty performing fine motor activities, but she also admitted to some improvement in her hands with injections (Tr. 26, 939, 1205). Ultimately, the ALJ found that Plaintiff's impairments caused symptoms, but not to the extent that Plaintiff alleged (Tr. 26).

In support of her argument that she had greater manipulative limitations, Plaintiff argues that the ALJ "appears to have ignored the medical evidence and testimony". But she cites to the very evidence that the ALJ discussed in the decision (*i.e.*, Plaintiff's hearing testimony and the consultative examination findings) (Tr. 24-27). In light of the substantial evidence cited by the ALJ, this Court will decline Plaintiff's invitation to reweigh the evidence. *Powers v. Apfel*, 207 F.3d 731, 434-35 (7th Cir. 2000) (the Court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for the ALJ); *Hays v. Berryhill*, No. 2:18-cv-00129-JVB-JEM, 2019 WL 3183619, at *4 (N.D. Ind. July 15, 2019) ("Although Plaintiff may not agree with the ALJ's treatment of the evidence, the ALJ did not cherry pick or ignore evidence."). It was Plaintiff's burden to prove her medical impairments and the functional limitations resulting

7

from those impairments. Plaintiff has failed to establish that the ALJ's RFC assessment is not supported by substantial evidence. Accordingly, the Court will not order remand on this issue.

Plaintiff next argues that the ALJ "incorrectly dismissed the weight and credibility of Dr. McIntire's RFC opinion… and gave very little by way of an explanation for same". In response, the Commissioner contends that this argument is unavailing because the ALJ followed the regulations and agency policy when evaluating the opinion evidence.

Under the regulations applicable to Plaintiff's claim, to be entitled to controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If a treating source opinion does not receive controlling weight, then the ALJ will evaluate all medical opinions, including those of non-examining consultants, in light of such factors as their supportability and consistency with the record. 20 C.F.R. § 404.1527(c)*; see also Green v. Berryhill*, No. 4:16- CV-90-JVB-JEM, 2019 WL 1375781, at *3 (N.D. Ind. Mar. 27, 2019) (noting that where the ALJ considered the treating relationship of an opinion provider and evidence of improvement of symptoms on medication, "this is often enough"); *Shingler v. Berryhill*, No. 2:16-CV-499-JVB- JEM, 2018 WL 3301840, at *3 (N.D. Ind. July 5, 2018) (finding no error where the ALJ considered supportability, consistency, and the source's treating relationship, and only "touched upon most of the other factors").

In the present case, in October 2018, Dr. McIntire opined that Plaintiff could perform less than sedentary work and would need to elevate her legs (Tr. 27, 1095). Dr. McIntire also indicated that Plaintiff would miss more than four days of work per month (Tr. 27, 1095). The ALJ considered Dr. McIntire's opinion, but gave it little weight (Tr. 27). As the ALJ explained,

8

the record did not support and was inconsistent with Dr. McIntire's opinion (Tr. 27). 20 C.F.R. § 404.1527(c). By way of example, the ALJ found nothing in the record to support Plaintiff's alleged need to elevate her legs (Tr. 27). As the ALJ noted, Plaintiff had no evidence of edema on examination (Tr. 27, 726, 731, 1003, 1006, 1078, 1152, 1156). The ALJ recognized that only recently (in November 2018) Plaintiff had a diagnosis of peripheral vascular disease (PVD) for which the doctor recommended a duplex study (Tr. 27, 1152-57). Nor did the record support an alleged need for four days off work per month (Tr. 27). As the ALJ explained, Plaintiff typically had normal exams with clear lungs and normal heartbeats, and fairly minimal diagnostic findings (Tr. 25, 27, 521-28, 662, 860-61, 896-97, 942-45, 1189-91, 1194).

The ALJ noted that Plaintiff had fairly normal diagnostic testing as well, including MRIs documenting only minimal degenerative changes of the left hip (Tr. 27, 799-800, 1137-38). A CT scan showed some degenerative changes of the lumbar spine, but other evidence showed that Plaintiff's muscle strength was normal (5/5) bilaterally, her deep tendon reflexes were normal, she had a normal gait, and she ambulated without an assistive device (Tr. 24, 517, 939). Likewise, the record does not support the extreme fingering, grasping, and handling limitations that Dr. McIntire assessed (Tr. 1095). Instead, testing showed evidence of only mild degenerative joint disease in the left hand with no significant arthritic changes in either hand (Tr. 26, 518-19, 1093). In March 2017, Plaintiff had grip strength of 4+/5 with only some difficulty performing fine motor activities (Tr. 26, 939). Plaintiff admitted that injections provided pain symptom relief (Tr. 26, 1205). Given the evidence of record, it was appropriate for the ALJ to give little weight to Dr. McIntire's opinion (Tr. 27).

Plaintiff contends that the ALJ "failed to identify a specific controlling medical source

9

opinion" when assessing the RFC. The regulations specifically provide that the final responsibility for determining the RFC lies with the ALJ. *See* 20 C.F.R. § 404.1546(c); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). RFC is not a medical opinion, but an administrative assessment based on medical and nonmedical evidence that the ALJ is uniquely responsible for making once the matter is before him. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citations omitted) (in formulating a claimant's RFC, an ALJ "must consider the entire record, including all relevant medical and nonmedical evidence… That is, the SSA need not accept only physicians' opinions."). Thus, it was entirely proper for the ALJ to consider all the medical and other evidence and determine Plaintiff's RFC. *Cf. Kasberger v. Astrue*, No. 06-3868, 2007 WL 1849450, at *3 (7th Cir. June 27, 2007) (unpublished) ("The ALJ did exactly what she was supposed to do when presented with competing medical evidence: she evaluated it and favored the more persuasive evidence….").

Clearly, the ALJ's evaluation of Dr. McIntire's opinion was appropriate under the regulations and supported by substantial evidence. Plaintiff has not established that additional RFC limitations were warranted in this case.

Next, Plaintiff contends that the ALJ erred in finding that Plaintiff could perform her past work. During the administrative hearing, the vocational expert testified that Plaintiff's past relevant work included the job of "fast food manager," Dictionary of Occupational Titles (DOT) number 185.137-010.[2] The vocational expert explained that this particular job is characterized as skilled in nature (with a specific vocational profile, or SVP, of 5), and light in exertion per the

10

DOT, but medium as Plaintiff performed it (Tr. 27-28, 57). The vocational expert reviewed the exhibits and listened to Plaintiff's testimony regarding her vocational background and determined, in her expertise, the DOT classification.

In response to a hypothetical question consistent with the ALJ's RFC finding, the vocational expert testified that despite Plaintiff's limitations, she could do her past work as a fast food manager as the job is generally performed in the national economy (i.e., at the light exertional level) (Tr. 27-28, 59-60). The vocational expert confirmed that her testimony was consistent with information in the DOT and its companion volume, the Selected Characteristics of Occupations (SCO) (Tr. 27-28, 61). When comparing Plaintiff's RFC for light work with the physical and mental demands of the job, the ALJ found that Plaintiff was able to perform it as generally performed (Tr. 28). Thus, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled at step four of the sequential evaluation process (Tr. 28). 20 C.F.R. § 404.1520(a)(4)(iv).

Plaintiff contends that the ALJ should not have relied on the vocational expert's testimony at step four. She asserts that her job should have been classified as a sandwich maker, not a fast food manager. Plaintiff claims that she did not meet all of the "specific job duties" of the "DOT's definition of that particular job," specifically she "did not keep the business records, collect and pay accounts, or purchase supplies". Plaintiff contends that she "was appointed as 'assistant manager' in title only" when the former manager quit, but "was not delegated any of the aforementioned job duties required of a 'Manager – Fast Food Services' per the DOT".

In response, the Commissioner points out, as the vocational expert explained, "[w]hen the DOT lists a variety of tasks and it says they may do this, they may do that, … it doesn't

11

necessarily mean they have to do all of those but those would – could potentially be included in the responsibilities of that job" (Tr. 63).

When questioned by Plaintiff's former attorney, the vocational expert acknowledged that Plaintiff's "testimony today was most consistent with the sandwich making portion of the job" (Tr. 62). The vocational expert further stated that if "[Plaintiff] was just a sandwich maker I would adjust my testimony… To the job of sandwich maker" (Tr. 63). But the vocational expert also indicated that "I believe [Plaintiff] said she managed that shop" (Tr. 63-64). In fact, the vocational expert was present during the hearing when Plaintiff testified that she was employed as a manager of a Subway restaurant (Tr. 42). When asked what her job entailed, Plaintiff explained that she put the produce away, "prepared all the food for the sandwiches, and did all the cooking of the bread" (Tr. 42). Notably, Plaintiff did not testify that she was a manager in "title only" with limited duties. Rather, she stated that she "did everything" (Tr. 42).

Additionally, the vocational expert relied on work history evidence in the record documenting that Plaintiff was a "sandwich shop manager" from 2003 to 2007 (Tr. 63). The information comes from a Disability Report and a Work History Report that Plaintiff completed in November 2016 (Tr. 203, 210, 214, 244). In fact, the record contains a Work History Report with Plaintiff's handwritten notations indicating that as a manger, she "supervise[d] people, order[ed] the food, made sandwiches, [was a] cashier, [and] deposit[ed] money" (Tr. 244). Thus, this evidence supports the finding that Plaintiff's role at Subway was not as limited as she now suggests. Clearly, the ALJ did not err by relying on the vocational expert's testimony concerning Plaintiff's past relevant work as a fast food manager. A claimant has the burden to prove that she cannot do her past relevant work at step four, but Plaintiff has failed to do so here. *Getch v.*

12

*Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (the claimant has the burden at step four to establish that she cannot perform his past relevant work).

The ALJ's finding that Plaintiff was able to perform her past relevant work was dispositive, and the ALJ was not required to proceed to step five to consider if there were other jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 27-28). 20 C.F.R. §§ 404.1520(a)(4)(iv),(f), 404.1560(b)(3). Consequently, Plaintiff's arguments that she should have been found disabled at step five of the sequential evaluation under the Grids are without merit. Because the ALJ's decision did not reach step five, the ALJ was not required to rely on the Grids, which are inapplicable to her case. *See* 20 C.F.R. § 404.1560(b); *see also Fetters v. Comm'r of Soc. Sec.*, 160 F. App'x 462, 463 (6th Cir. 2005) ("Use of the Grids is not required at step four of the five-step sequential process prescribed by 20 C.F.R. § 404.1520 for evaluating disabilities.") (citation omitted).

Accordingly, as substantial evidence supports the Commissioner's Decision, and Plaintiff's arguments are not supported by the evidence, the Decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: February 2, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court

13